BAA Massachusetts, Inc., & others[1] *vs.* Alcoholic
Beverages Control Commission.

No. 98-P-2086.

Suffolk. April 13, 2000. - August 16, 2000.

Present: Porada, Gillerman, & Lenk, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, License, Supplier, Transportation permit, Sale to minor, Revocation of license.

Discussion of the scope of review of a decision under the Liquor Control Act, G. L. c. 138, by the Alcoholic Beverages Control Commission. [842]

The Alcoholic Beverages Control Commission erred as a matter of law in revoking the certificate of compliance held by an out-of-State supplier pursuant to G. L. c. 138, § 18B, for the failure of a common carrier to have secured a permit under G. L. c. 138, § 22, before making a delivery of liquor in Massachusetts, where nothing in § 18B established any duty of the supplier to ascertain the status of the transporter. [842-845]

Guidelines of the Alcoholic Beverages Control Commission, governing "sting" operations conducted on licensed premises, were not applicable to a sting operation conducted on private premises. [846]

A decision of the Alcoholic Beverages Control Commission, that a properly permitted common carrier had violated G. L. c. 138, § 34, by delivering alcohol to a minor, was supported by substantial evidence, and there was no evidence to support a claim of entrapment. [845-846]

The Alcoholic Beverages Control Commission erred in concluding that a package store had made sales of alcoholic beverages "at other than the licensed premises" in violation of G. L. c. 138, § 15, where there was no evidence that the store had made any sales at all. [846-847]

Substantial evidence supported the conclusion of the Alcoholic Beverages Control Commission that a package store had ceased to conduct its licensed business and that the store had otherwise violated its agreement with the commission [847-849], and the commission did not abuse its discretion in revoking the store's license to sell liquor [849].

Civil actions commenced in the Superior Court Department on December 19, 1997, and March 5, 1998, respectively.

[1]SLJ Group, Inc., doing business as Lionstone International, and AB Logistics, Inc., doing business as Adcom Express.

After consolidation of the cases, motions for judgment on the pleadings were heard by *Nonnie S. Burnes,* J.

*Evan T. Lawson* (*J. Mark Dickison* with him) for the plaintiffs.

*Edward J. DeAngelo,* Assistant Attorney General, for the defendant.

GILLERMAN, J. BAA Massachusetts, Inc. (BAA Massachusetts), SLJ Group, Inc., doing business as Lionstone International (Lionstone), and AB Logistics, Inc., doing business as Adcom Express (Adcom), have appealed from a Superior Court decision allowing the motion of the Alcoholic Beverages Control Commission (commission) for judgment on the pleadings[2] with respect to the three consolidated cases. The Superior Court affirmed the commission's decisions which (i) revoked the package store license of BAA Massachusetts, (ii) revoked Lionstone's certificate of compliance to export alcoholic beverages from Illinois into Massachusetts, and (iii) suspended Adcom's permit to transport alcoholic beverages within the Commonwealth for six days.

Certain material facts are not in dispute.[3] Beer Across America, Inc., an Illinois corporation (BAA Illinois), in conjunction with various other entities, operates Beer Across America, a mail order beer and wine of the month club, throughout the United States. In December, 1994, BAA Illinois first submitted to the commission a proposal to operate a mail order beer and wine of the month club business within the Commonwealth.

The commission has described the Massachusetts "three-tier" requirements for a mail order business originating with an out-of-State supplier and directed to Massachusetts consumers:[4]

1. A supplier (i.e., certificate of compliance holder, G. L. c. 138, § 18B[5]) furnishes the product to:

---

[2]The pleadings included the entire administrative record. Our review is confined to that record. See G. L. c. 30A, § 14(5).

[3]The commission issued three decisions, one for each of the three actions taken by it. The preliminary facts we recite are gathered from the three decisions of the commission.

[4]The commission's description, which was admitted as an exhibit, appears in a letter dated April 5, 1995, from the commission to a third party which had inquired about the legal requirements affecting an out-of-State supplier who desired to engage in a mail order beer business in Massachusetts.

[5]Section 18B provides, in part, "The commission shall issue a certificate of compliance to a licensee having a place of business located, and a license

2. A wholesaler/importer (G. L. c. 138, § 18[6]), which is licensed to sell to:

3. A Massachusetts retail licensee (either a "pouring license" under G. L. c. 138, § 12, or a "package store license" under G. L. c. 138, § 15), which is licensed to sell to a consumer.

The commission's description continues: "The out of state supplier must be a Certificate of Compliance Holder in Massachusetts. The beer must be imported into the State by a licensed Massachusetts Wholesaler/Importer and sold to a properly licensed Massachusetts package store. Only a properly licensed Massachusetts package store may sell beer to consumers. The beer may be delivered to consumers only by vehicles properly licensed with a valid Massachusetts transportation permit."

On April 6, 1995, the commission and the plaintiffs signed an "Agreement and Approval" (Approval) detailing the conditions under which the commission would permit the operation of a beer and wine of the month club business in the Commonwealth. According to the Approval, BAA Illinois would provide marketing services for the business; Lionstone, the holder of a certificate of compliance, see note 5, *supra*, would be the supplier, exporting alcoholic beverages from Illinois into the Commonwealth; the wholesaler/importer would be International Beverage, Inc. (International), the holder of a § 18 license, see note 6, *supra*; the retail package store receiving beverages from International would be BAA Massachusetts (referred to in the Approval by a predecessor's name[7]), the holder of a package store license under c. 138, § 15; and the express transportation

---

granted, outside the commonwealth and whose license authorizes the exportation or sale of alcoholic beverages to licensees in this commonwealth . . . ."

[6]Section 18, in part, authorizes the issuance of licenses to importers and wholesalers for the purpose of selling alcoholic beverages, including beer and wine, to businesses holding licenses for the resale of such beverages to consumers either on premises ("pouring licenses") or off premises ("package store licenses").

[7]At the time the commission issued the Approval, Great American Beers, Limited (GAB), a retail package store licensed under G. L. c. 138, § 15, to sell alcoholic beverages for off-premises consumption at 50 Terminal Street in Charlestown, Massachusetts, received and filled orders in the Commonwealth for Beer Across America. While the Approval permitted GAB to fulfill existing orders, it explicitly required that BAA Illinois apply for and obtain a retail package store license prior to accepting any new orders from Massachusetts customers. Because retail licenses can only be held by Massachusetts corporations, G. L. c. 138, § 15, BAA Illinois incorporated BAA Massachusetts,

company which would deliver the alcoholic beverages to Massachusetts consumers would be Adcom, the holder of a permit to transport and deliver alcoholic beverages in Massachusetts. See G. L. c. 138, § 22. The signatory parties, including BAA Illinois, Lionstone, International, and Adcom, each agreed to be bound by the provisions of the Approval.

The Approval recites that "[a]ny deviation from this Approval," or any deviation from any regulation of the commission, or any regulation of the local licensing authority, "by BAA [Illinois] or any other participant shall be grounds for disciplinary action, jointly and severally against BAA [Illinois] or any other participant, including . . . revocation of license and withdrawal of this Approval."

1. *Scope of review.* Our review of the commission's decisions under the Liquor Control Act, G. L. c. 138, is undertaken within the context of the commission's considerable statutory powers. "Regulation of the liquor industry in Massachusetts is comprehensive and pervasive. See G. L. c. 138. 'The powers of the States in dealing with the regulation of the sale of intoxicating liquors are very broad. What they may wholly prohibit, they may permit only on terms and conditions prescribed by the Legislature.' " *Cellarmaster Wines of Mass., Inc.* v. *Alcoholic Bevs. Control Commn.*, 27 Mass. App. Ct. 25, 27 (1989), quoting from *Connolly* v. *Alcoholic Bevs. Control Commn.*, 334 Mass. 613, 619 (1956).

General Laws c. 6, § 44, confers upon the commission "general supervision of the conduct of the business of . . . selling alcoholic beverages . . . ." See *Howard Johnson Co.* v. *Alcoholic Bevs. Control Commn.*, 24 Mass. App. Ct. 487, 491 (1987). The commission also has "comprehensive powers of supervision over licensees, including the power to revoke, modify, or suspend licenses. G. L. c. 138, § 23." *Ibid.* Nevertheless, G. L. c. 30A, § 14(7)(*c*), "permits the commission's decision to be set aside if based upon an error of law . . . ." *Van Munching Co., Inc.* v. *Alcoholic Bevs. Control Commn.*, 41 Mass. App. Ct. 308, 310 (1996).

2. *Revocation of Lionstone's certificate of compliance.*

Based on uncontradicted evidence at the hearings held on July 22, 1997, and November 18, 1997, the commission found

whose two individual stockholders (so the commission found) obtained a license to run a package store at GAB's former location in Charlestown.

that on January 14, 1997, the cargo of a truck operated by Trans-Continental Distributors, Inc. (Trans-Continental), was unloaded into the delivery door of Adcom in East Boston. Investigators of the commission who witnessed the unloading identified themselves and asked the driver to produce his license, registration, and transportation permit under G. L. c. 38, § 22, which requires each "general express or trucking business" to obtain and carry a permit in order to "transport and deliver alcoholic beverages" within the Commonwealth. The driver produced his license and the registration, but he was unable to produce a § 22 permit. The driver also produced a bill of lading (signed by Tony Cortez on behalf of BAA Massachusetts) which showed that the truck had transported and delivered 1,496 packages of alcoholic beverages from Lionstone, of Lake Bluffs, Illinois, to International, in Holbrook, Massachusetts.[8]

The interstate carrier, Trans-Continental, carried Lionstone's alcoholic beverages from Illinois and delivered the cargo in Massachusetts, and under the eighth paragraph of § 22, the *knowing* transportation of such beverages in the Commonwealth without a permit is punishable by a fine or imprisonment. Trans-Continental (not a party to these proceedings) was obviously in violation of § 22, and the commission concluded that Lionstone was also in violation of § 22 because the carrier, Trans-Continental, was in violation of the statute.[9] On that basis, the commission revoked Lionstone's certificate of compliance. The judge concluded, and the commission now argues, that without such an interpretation of § 22, Lionstone would be "circumventing" the statute. We disagree.

Section 22, as previously stated, requires carriers transporting alcoholic beverages in Massachusetts to obtain a permit from the commission, and any carrier that "knowingly" fails to comply with the permit requirement is subject to a fine or imprisonment. The thrust of § 22 is to put the burden of obtaining a permit squarely on the carrier.

We look to G. L. c. 138, § 18B (the section under which Lion-

---

[8]Presumably, Trans-Continental carried the cargo from International's premises in Holbrook, to BAA Massachusetts in Charlestown, and from there to Adcom's premises in East Boston.

[9]The commission also relied on §§ 2 and 41 of G. L. c. 138. Neither section is applicable here. Section 41 makes the delivery of alcoholic beverages from any commercial structure "prima facie evidence that such delivery is a sale."

stone received its certificate of compliance and which governs the conduct of a certificate holder), to determine the statutory duties of holders of a certificate of compliance such as Lionstone. Certificate holders are required to submit to the commission periodically information concerning "all shipments or sales of alcoholic beverages made by him to *licensees in this commonwealth*, and that he comply with the provisions of this chapter and any rules or regulations made under authority contained therein *which pertain to a licensee of the same class*, type or character, doing business in this commonwealth under a license issued by the commission" (emphasis added).[10] There is no provision in § 18B that establishes the duty of the holder of a certificate of compliance to determine — at the certificate holder's risk of non-compliance with § 18B and the revocation of its certificate of compliance — whether the carrier it hires for a shipment into Massachusetts has a § 22 permit. See and compare *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 133 (1996) (the court declined the commission's suggestion that G. L. c. 138, § 34, which prohibits sales to any person under the age of twenty-one, means that a licensee is required " 'to exercise reasonable . . . care in preventing the delivery of liquor to a minor,' " since the statute contains no language requiring the exercise of reasonable care). Moreover, Lionstone delivered to Adcom, and it was Adcom who did possess a § 22 permit (and who delivered to a minor as described below). The Approval is *silent* as to the duties of Lionstone regarding the common carrier it engages to transport alcoholic beverages to a Massachusetts carrier holding a § 22 permit such as Adcom.[11]

So too, there is no provision in § 22 (providing for the issu-

---

[10]The term "licensee" in § 18B is a term of art referring to the holder of an importer's or wholesaler's license under § 18.

[11]Paragraph 16 of the Approval — upon which the judge relied — provides, "Deliveries shall be made only in vehicles carrying a valid transportation permit." However, paragraph 7 of the Approval, which discusses common carriers, makes no reference to Lionstone, and instead refers only to Adcom and SNAP Express Corporation (SNAP) of Fitchburg, Massachusetts, each of which had a § 22 permit. Paragraph 14 provides that Adcom and SNAP are responsible to conform to Massachusetts law and will be responsible for any "delivery to underage persons." Paragraph 15 provides that Adcom and SNAP "shall deliver only in-person and shall make such delivery only to individuals 21 years of age or older." It is in this context that we construe

ance of permits to carriers) which places *any* burden, or responsibility, on the person or entity delivering alcoholic beverages to a carrier, here, Lionstone, for transportation within the Commonwealth.

To treat the failure of Trans-Continental to obtain a permit as the failure of Lionstone is to make Lionstone absolutely liable for the omission of an act which it had no obligation to perform under the statutes of the Commonwealth.[12]

The commission's decision revoking Lionstone's certificate of compliance was based upon an error of law, see G. L. c. 30A, § 14(7)(c).[13]

3. *The six-day suspension of Adcom's transportation permit.*

Based on uncontradicted evidence at the hearing before the commission on November 18, 1997, the commission found these facts:

On December 16, 1996, a nineteen year old woman, who was working as a decoy for the commission, telephoned Beer Across America in Illinois (described more fully below) and placed an order for alcoholic beverages to be delivered to her. The order was for a three-month membership. When the order was placed, the decoy was asked whether she was over twenty-one. She replied in the affirmative. The order was accepted by a credit card charge of $24.95 in favor of "Beer Across America, Lake Bluff Ill."

On January 10, 1997, an Adcom employee delivered two packages of beer to the decoy's house in Massachusetts. The employee asked the decoy whether she was over twenty-one,

paragraph 16 to refer only to deliveries made by Adcom and SNAP to the consumer and not to out-of-State deliveries made by Lionstone to an intermediate carrier.

[12]Furthermore, although paragraph 1 of the Approval authorizes the commission to revoke all licenses and permits in the event that any "participant" is in violation of Massachusetts law or the commission's regulations, Trans-Continental was not a "participant" involved in the agreement. We note also that the commission did not invoke its power under paragraph 1 as against Lionstone based on violations by Adcom and BAA Massachusetts.

[13]The commission's decision to revoke Lionstone's certificate of compliance was based upon two additional reasons which the commission subsequently abandoned. See note 17, *infra.* Thus, our reversal on the grounds indicated in the text is sufficient to nullify the commission's conclusion that Lionstone "shows a systemic disregard for the requirements of the lawful conduct of business in Massachusetts under the Liquor Control Act," and to reverse the judgment against Lionstone.

and she again replied in the affirmative. The employee then asked the decoy for identification, and she refused. After the Adcom employee informed her that identification was necessary to complete the delivery, she instructed the employee to take the beer back. The employee thereupon left the beer with the decoy without obtaining any identification.

On these facts the commission concluded that Adcom had violated G. L. c. 138, § 34, which prohibits the sale or delivery of alcoholic beverages to a minor.

Adcom argues that the commission's decisions were "[m]ade upon unlawful procedure," G. L. c. 30A, § 14(7)(d), because the sting operation conducted against the plaintiffs violated commission guidelines.[14] The plaintiffs assert that commission investigators instructed a minor to misrepresent her age during a sting operation in violation of a guideline requirement that "[a]t no time shall the underage person attempt to misrepresent their age or provide any identification."

The sting guidelines provide that they are to be "used when conducting underage drinking stings *on licensed premises*" (emphasis added). The sting operation in this case occurred at private, not licensed, premises, and the guidelines were inapplicable to the events relied upon by the commission.[15]

There was no entrapment, as Adcom claims. Its employee was instructed by the decoy to take back the beer, but instead the employee insisted on leaving the package with the decoy.

The commission's findings were supported by substantial evidence, and because there was no error of law, the commission was justified in ruling that Adcom had violated G. L. c. 138, § 34, which prohibits the sale or delivery of alcoholic beverages to a minor.

4. *Revocation of the license of BAA Massachusetts.* After

---

[14]The sting guidelines, which were attached as an addendum to the commission's brief, were never made part of the administrative record. See *Commonwealth* v. *Core*, 370 Mass. 369, 371 (1976) (generally, an addendum to a brief which has not been made part of the record is not properly before the reviewing court). Both the plaintiffs and the commission, however, refer to these guidelines in support of their assertions, and there is no dispute as to the accuracy of the guidelines. Thus, we consider the sting guidelines as if they were part of the record.

[15]Adcom also argues that the sale to the decoy was a sale for the use of the commission and therefore not a sale for the use of a "person" under § 34. That argument was rejected in *Fran's Lunch, Inc.* v. *Alcoholic Bevs. Control Commn.*, 45 Mass. App. Ct. 663, 664-665 (1998).

hearings held on July 22, 1997, and November 18, 1997, the commission found that a customer in Massachusetts desiring to place an order would call an "800" number for Beer Across America. A customer calling this number would reach a customer service representative in Illinois.[16] The customer's order would then be received and accepted by BAA Illinois in Illinois and paid for by a credit card charge in favor of "Beer Across America, Inc., and Beer Across America, Lake Bluff, Illinois," and not in favor of BAA Massachusetts, the licensed package store in Massachusetts. On these subsidiary findings, the commission, relying on G. L. c. 138, § 15 (sales of alcoholic beverages shall be conclusively presumed to have been made in the store wherein the order was received from the customer), concluded that BAA Massachusetts had made sales of alcoholic beverages "at other than the described licensed premises."

The commission was in error. The order of a customer was, as the commission found, "taken and received" by BAA Illinois in Illinois, and the order was accepted, and payment was received, in Illinois. There was no sale of alcoholic beverages by BAA Massachusetts; indeed, as discussed below, BAA Massachusetts had ceased to conduct its licensed business. Thus, the presumption imposed by § 15 is not applicable to BAA Massachusetts.

The commission made additional findings of fact regarding BAA Massachusetts which do justify the action taken by the commission. BAA Massachusetts held a license to sell beer and wine for off-premises consumption at 50 Terminal Street in Charlestown. Undisputed evidence established that BAA Massachusetts kept no inventory of alcoholic beverages, no implements of sale of alcoholic beverages, and no telephones at its licensed location. At the time of the commission's investigation, the licensed site was being used as storage space for another company. These observations were made on January 14, 1997, January 17, 1997, and January 24, 1997.

While shipments of alcoholic beverages stopped at the licensed location in Charlestown, they were neither inspected by BAA Massachusetts employees nor unloaded at that point. BAA Massachusetts merely paid an employee (Tony Cortez) of

---

[16]When calling the local "800" number, the customer first receives a message which says, "Hi you've reached Great American Beers, Beer Across America, [p]lease call our customer service number directly in Illinois at 1-800-854-2337 . . . ."

the warehouse in which BAA Massachusetts was located to sign for deliveries to BAA Massachusetts and send them along to their next destination.

The license manager was interviewed on February 3, 1997. She admitted that she had not been to the licensed premises since early December, 1996, and that the premises were not open for business a minimum of thirty-five hours per week.

The commission found that the license manager did not know, or was not sure of, any of the following pieces of information: who pays for the transportation of the alcoholic beverages from BAA Massachusetts to the licensed express company used by BAA Massachusetts to make its deliveries to its Massachusetts consumers; who pays for deliveries of alcoholic beverages to BAA Massachusetts; how BAA Massachusetts receives payment for the product it sells; how a Massachusetts consumer places an order to purchase alcoholic beverages with BAA Massachusetts; or who pays her for her work at BAA Massachusetts. The commission found that there was no credible effort to rehabilitate the license manager, or to mitigate the effect of her testimony.

On these subsidiary findings, for which there was substantial evidence, the commission justifiably concluded that BAA Massachusetts had ceased to conduct its licensed business in Massachusetts. For that reason, G. L. c. 138, § 77 (a licensing authority may cancel any license issued under c. 138 "if the licensee ceases to conduct the licensed business"), authorized the commission to cancel the license of BAA Massachusetts.[17]

Moreover, paragraph 18 of the Approval expressly contemplated that BAA Massachusetts would receive all new orders for packaged beer commencing with the issuance of its § 15 license. As stated above, new orders were not received or accepted by BAA Massachusetts. Paragraph 18 of the Approval was violated, and under the express provisions of paragraph 1

---

[17]The commission's brief in this court states that BAA Massachusetts and Lionstone violated the statutory and regulatory requirements to post prices and to file schedules of alcoholic beverages. In the Superior Court the commission stated that it would not, as a result of a decision in the United States District Court for the District of Massachusetts, rely on these alleged violations to justify its decisions sanctioning these two companies. In its appellate brief, the commission explains that because it did not rely on these alleged violations in the Superior Court, it does not rely on them in this court. Thus, we make no comment on these alleged violations.

of the Approval, see note 18 and related text, *infra,* BAA Massachusetts was responsible for that violation.

5. *Sanctions.* BAA Massachusetts challenges the commission's revocation of its package store license as unreasonably harsh. A reviewing court will not, however, interfere with the agency's imposition of a penalty except in the most extraordinary circumstances, *Vaspourakan, Ltd.* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. 347, 355 (1987), citing *Levy* v. *Board of Registration & Discipline in Med.,* 378 Mass. 519, 528-529 (1979), and there are no such circumstances here.

General Laws c. 138, § 77, described above, specifically authorizes the commission to cancel a license if it finds that a licensee has ceased to conduct its licensed business. Because the revocation was authorized by the statute, it has a reasonable relation to the plaintiff's unlawful conduct. See *Blue Moon Saloon, Inc.* v. *Alcoholic Bevs. Control Commn.,* 11 Mass. App. Ct. 890, 891 (1980). Even the Approval, upon which the plaintiff relies, authorizes the revocation of the plaintiffs' respective licenses if any of the plaintiffs violate the terms of the Approval or statutory requirements.[18]

Given that the range of penalties is for the agency, the fact that the commission imposed more lenient penalties for similar violations in the past does not render the sanctions against the plaintiffs arbitrary or capricious. See *Vaspourakan, Ltd.* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. at 355 n.7. Thus, the discipline imposed by the commission did not constitute an abuse of discretion.

The commission's decision revoking Lionstone's certificate of compliance is reversed; its order suspending the license of Adcom for six days is affirmed; and its decision revoking the license of BAA Massachusetts is affirmed.

*So ordered.*

---

[18]As set forth earlier in this opinion, the first paragraph of the Approval provided that "[a]ny deviation from this Approval, any regulation of the [commission], any regulation of the local licensing authority or any law of the Commonwealth of Massachusetts by [BAA Illinois] or any other participant shall be grounds for disciplinary action, jointly and severally against [the participants], including but not limited to revocation of license and withdrawal of this Approval."