NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-996

THE PORT RESTAURANT AND BAR, INC.[1]

vs.

ALCOHOLIC BEVERAGES CONTROL COMMISSION & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Port Restaurant and Bar, Inc. (The Port), appeals from a judgment issued by a Superior Court judge affirming the decision of the Alcoholic Beverages Control Commission (ABCC) to approve a suspension of The Port's license to sell alcohol imposed by the Board of Selectmen of Harwich (board).[3]  We conclude that the board had the authority to suspend The Port's license for permitting violations of the Governor's COVID-19

---

[1] Doing business as The Port.

[2] Larry G. Ballantine, Donald F. Howell, Michael D. MacAskill, and Edward J. McManus, each in their representative capacity as a member of the Town of Harwich Selectboard.

[3] Harwich Town Meeting changed the name of this body to the Select Board in May 2022, after the license suspension decision but before the filing of the complaint.

restrictions, even if the board lacked the authority to enforce those restrictions directly.  Concluding that The Port's various other challenges lack merit, we affirm.

1.  Standard of review.  "The scope of review of the [ABCC's] decision, both in the Superior Court and in [the appellate courts], is defined by G. L. c. 30A, § 14."  eVineyard Retail Sales-Mass., Inc. v. Alcoholic Beverages Control Comm'n, 450 Mass. 825, 828 (2008), quoting Howard Johnson Co. v. Alcoholic Beverages Control Comm'n, 24 Mass. App. Ct. 487, 490 (1987).  "Judicial review of the ABCC's decision is limited to determining whether the decision was arbitrary and capricious or whether the ABCC made an error of law."  RK&E Corp. v. Alcoholic Beverages Control Comm'n, 97 Mass. App. Ct. 337, 340 (2020).  "We will uphold the [ABCC's] decision if there is substantial evidence to support it."  Heineken U.S.A., Inc. v. Alcoholic Beverages Control Comm'n, 62 Mass. App. Ct. 567, 571-572 (2004).  "Pursuant to G. L. c. 30A, § 14 (5), our review is confined to the administrative record."  RK&E Corp., supra.

2.  Authority.  The board found that The Port violated 204 Code Mass. Regs. § 2.05(2), which states that "[n]o licensee . . . shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises."  Specifically, the illegalities were violations of the Governor's COVID-19 orders regarding on-premises alcohol consumption during

2

the pandemic.  Because those orders provided for enforcement by injunction or a civil fine on the request of the Department of Labor Standards, the Department of Public Health, or a municipal board of health, The Port argues that the board lacked the authority to suspend its license for violating the Governor's COVID-19 orders.

This argument misses the mark.  The board did not suspend The Port's license as a punishment for violating the Governor's orders, but rather because The Port failed to comply with the condition of its liquor license to forbid illegalities on the licensed premises, 204 Code Mass. Regs. § 2.05(2).  In DeMello v. Alcoholic Beverages Control Comm'n, 411 Mass. 1001, 1001 (1991), the Supreme Judicial Court held that a municipal licensing authority may revoke a liquor license for permitting drug transactions to occur on the premises and specified that "[t]he plaintiff need not have been a participant in the illegal conduct to have violated the regulation."  Similarly, in Rum Runners, Inc. v. Alcoholic Beverages Control Comm'n, 43 Mass. App. Ct. 248, 251 (1997), we upheld the authority of a municipal licensing authority to suspend a liquor license where the bartender observed a drug transaction without calling the police.  Just as a board may suspend a liquor license where drug transactions -- which the board lacks the authority to punish

3

directly -- occur, a board may suspend a liquor license where the establishment permits violations of the Governor's orders.

We reject The Port's assertion that the Governor's orders forbade the board from suspending a liquor license where the establishment permitted violations of the Governor's orders. The doctrine of expression unius est exclusio alterius, invoked by The Port, "'requires great caution in its application,' and 'will be disregarded where its application would thwart the legislative intent made apparent by the entire act (citations omitted).'" Lyons v. Secretary of the Commonwealth, 490 Mass. 560, 576 (2022). Here, the purpose of the Governor's orders was to reduce the spread of COVID-19 by obtaining compliance with his limitations on gatherings, not to prohibit localities from inducing local establishments to comply with his orders. As the Supreme Judicial Court has held, the doctrine may not be used to "thwart the [Governor's] purpose by converting a . . . mandate into a matter of fiscal choice." Attorney Gen. v. Milton, 495 Mass. 183, 193 (2025).

Finally, we are unpersuaded that the Governor's August 2020 order, which specifically stated that the ABCC or a local licensing authority could suspend a liquor license for permitting a violation of the order, demonstrates that the Governor intended to forbid such action in his prior orders. As the Supreme Judicial Court warned, a subsequent amendment

4

granting authority "certainly should be given no weight as 'demonstrating' that no such authority existed before its enactment.  To conclude otherwise might discourage the Legislature from eliminating uncertainties in existing legislation for fear that courts might construe its action as an admission that theretofore an agency lacked authority to act in a questioned area."  Massachusetts Respiratory Hosp. v. Department of Pub. Welfare, 414 Mass. 330, 333 n.4 (1993).  Accord Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627, 633 (1992), quoting Massachusetts Wholesalers of Malt Beverages, Inc. v. Attorney Gen., 409 Mass. 336, 344 (1991) ("What the . . . legislation involved in this case means cannot rationally be influenced by [subsequent] legislation").

3.  Substantial evidence.  The Port argues that "the administrative record before the ABCC does not prove any violations were committed by The Port and the administrative record does not support the ABCC decision to approve the action taken by the Harwich Board in suspending The Port's alcohol license for three (3) days."  The Port, however, failed to order a transcript of the evidence before the ABCC.  "That a transcript must be submitted to support a claim that the evidence was insufficient is not some hypertechnical requirement, but a reflection of the fact that resolution of such a claim requires the reviewing court to see the entirety of

5

the evidence that was presented." Covell v. Department of Soc. Servs., 439 Mass. 766, 782 (2003). We cannot assume, as The Port appears to want us to do, that the exhibits submitted to the ABCC reflect the evidence at the hearing.

For the same reason, The Port's challenge to the three day sanction fails. The Port claims that "not a single member of the Harwich Board appeared to defend or other[wise] justify their actions." The witness list for the hearing, however, includes the chair of the board, and his appearance as a witness appears in the administrative record. Without a transcript, we have no way to determine whether the board chair testified or whether the town established the reasonableness of its sanction some other way. See United Steelworkers of Am. v. Commonwealth Employee Relations Bd., 74 Mass. App. Ct. 656, 661 (2009).

4. Duplicative investigations. General Laws c. 138, § 23A, states that, "[i]n investigating any violation by a licensee, the commission shall endeavor to avoid duplicating similar investigations by local licensing authorities." Contrary to The Port's argument, there is no evidence in the record provided to us that the ABCC duplicated any town investigation. The town investigated The Port in May 2020, and the ABCC investigated The Port in July 2020. Moreover, the statute does not prohibit duplicative investigations; it merely requires the ABCC to "endeavor to avoid" them. G. L. c. 138,

6

§ 23A. Nothing in the record we have been provided explores how the ABCC decided to proceed or establishes that the ABCC made no efforts to avoid duplicative investigations. Again, the absence of a transcript makes it impossible to determine whether the statute was violated, much less whether any violation of the statute would support the extraordinary remedy of requiring that the board's suspension be reversed. See Covell, 439 Mass. at 782.

5. Findings. General Laws c. 138, § 67, par. 3 states, "If the commission approves the action of the local licensing authorities it shall issue notice to them to that effect, but if the commission disapproves of their action it shall issue a decision in writing advising said local authorities of the reasons why it does not approve." The Supreme Judicial Court, in considering the interplay between this statute and G. L. c. 30A, § 11 (8), has held that the effect is "to permit the [ABCC] to indicate its approval of an action of the local licensing authority by affirming that decision without needlessly restating the underlying grounds," in which case the "affirmance will, of course, be taken as embodying the findings and conclusions of the local authority." Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm'n, 372 Mass. 152, 156 (1977). Here, the ABCC approved the board's action and thus, by the plain terms of the statute, it could rely on the

7

board's findings and conclusions.  Accordingly, The Port's invocation of G. L. c. 30A, § 11 (8), which requires that every agency decision "shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision," is unavailing.

In any event, the ABCC's decision complied with the requirements of G. L. c. 30A, § 11 (8).  "An agency must make all findings necessary to its decision . . . , but need not make detailed findings of all evidence presented to it, as long as its findings are sufficiently specific to allow us to review its decision."  Hingham v. Department of Telecomm. & Energy, 433 Mass. 198, 207 (2001).  Contrary to The Port's contention that "[t]he Decision makes no factual findings," the ABCC made twenty-six factual findings, comprising nearly three pages of text, which contain all factual findings necessary to establish that The Port violated 204 Code Mass. Regs. § 2.05(2).  The ABCC also stated all issues of law "necessary to the decision." G. L. c. 30A, § 11 (8).  Although it would have been preferable for the ABCC to specifically address The Port's legal defenses of lack of authority and duplicative investigations, we discern no prejudice to The Port as those defenses lacked merit.  See Weinberg v. Board of Registration in Med., 443 Mass. 679, 687 (2005) ("The board is not required to address each and every legal issue, theory, and case citation relied on by the

8

respondent").  "Overall, [the] decision is sufficiently robust for us to undertake a meaningful review and conclude that it was supported by substantial evidence."  Zoning Bd. of Appeals of Milton v. HD/MW Randolph Ave., LLC, 490 Mass. 257, 268 (2022).

6.  Timeliness.  It is beyond question that the ABCC failed to comply with the requirement of G. L. c. 138, § 67, par. 2, that "[t]he decision of the commission shall be made not later than thirty days after the completion of the hearing."  Where, as here, the statute is silent regarding the consequences of failing to meet the deadline, we cannot presume that dismissal of the appeal is the proper remedy.  See U.S. Bank Trust, N.A. v. Johnson, 96 Mass. App. Ct. 291, 295 (2019); Plymouth v. Power, 97 Mass. App. Ct. 532, 536-537 (2020).  Many similar deadlines are regarded as directory, rather than mandatory.  See, e.g., Connors v. Annino, 460 Mass. 790, 793 n.7 (2011); Burnham v. Hadley, 58 Mass. App. Ct. 479, 481 n.4 (2003); Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 415 n.7 (2001).

In any event, if the deadline were mandatory, that deadline would merely deprive the ABCC of the authority to disapprove the board's decision.  The Port provides no reason why the consequence of the ABCC's tardiness should be the reversal of the board's decision.  Moreover, "[o]ur review of the commission's decision is governed by G. L. c. 30A, § 14 (7),

9

which requires us to determine whether a party's substantial rights were prejudiced." 15 LaGrange St. Corp. v. Massachusetts Comm'n Against Discrimination, 99 Mass. App. Ct. 563, 567 (2021).  The Port provides no explanation how it was prejudiced by the ABCC's tardiness, which had the effect of delaying the suspension of The Port's liquor license for over one year.[4]

Judgment affirmed.

By the Court (Blake, C.J., Ditkoff & Brennan, JJ.[5]),

*Paul Little*

Clerk

Entered:  July 31, 2025.

---

[4] The Port argues for the first time in its reply brief that judicial deference to administrative agencies is unconstitutional.  "This argument, never raised at trial and asserted for the first time in the . . . reply brief, is waived."  Parsons v. Ameri, 97 Mass. App. Ct. 96, 108 n.12 (2020).

[5] The panelists are listed in order of seniority.