eVINEYARD RETAIL SALES-MASSACHUSETTS, INC. *vs.*
ALCOHOLIC BEVERAGES CONTROL COMMISSION.

Suffolk. January 10, 2008. - March 18, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, Sale to minor.
*Moot Question. Entrapment.*

Discussion of the scope of appellate review of a decision of the Alcoholic
Beverages Control Commission. [828-829]

The decision of the Alcoholic Beverages Control Commission (commission)
to suspend a wine retailer's license for a violation of G. L. c. 138, § 34,
was not rendered moot by virtue of the fact that the license that the retailer
was holding at the time of the violation had since expired, where the com-
mission could suspend the retailer's current license based on the offense
committed under its prior license. [829-830]

In a civil action seeking review of a decision of the Alcoholic Beverages
Commission (commission) to suspend a wine retailer's license for selling
alcohol to a minor, the judge erred in allowing the retailer's motion for
judgment on the pleadings, where the plain language of G. L. c. 138, § 34,
forbade the sale and delivery of alcohol to minors, and where the retailer
was responsible for both the sale and the delivery, having taken the order,
received and accepted payment, and effectuated delivery through its contract
with a licensed deliverer; further, the commission's interpretation of the
statute as allowing it to proceed separately against both the retailer and the
licensed deliverer was in accord with the statute's language and its legisla-
tive intent. [830-831]

In a civil action seeking review of a decision of the Alcoholic Beverages
Commission, following a "sting" operation by the Attorney General's of-
fice, to suspend a wine retailer's license for selling alcohol to a minor, in
violation of G. L. c. 138, § 34, via the Internet, there was no merit to the
retailer's claim of entrapment, where the retailer failed to produce evidence
of government inducement, rather than mere solicitation; where, in the
absence of a scienter requirement in the statute, the question was whether
the retailer's practices evidenced a willingness to sell alcohol in a manner
that could allow minors to make purchases by the simple expedient of
misrepresenting their age; and where the operation was conducted in
compliance with the Attorney General's guidelines for sting operations
concerning Internet sales of alcohol to minors. [831-833]

CIVIL ACTION commenced in the Superior Court Department on
January 20, 2005.

The case was heard by *Christopher J. Muse*, J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David Hadas*, Assistant Attorney General, for the defendant.

*Mitchel S. Ross (Francis X. Hubbard & Stephen V. Miller* with him) for the plaintiff.

CORDY, J. Wine.com, Inc. (wine.com), is a corporation in the business of selling wine directly to consumers throughout the country. The plaintiff, eVineyard Retail Sales-Massachusetts, Inc. (eVineyard), is a wholly owned subsidiary of wine.com, through which it sells wine to customers in Massachusetts.[1] eVineyard is licensed by G. L. c. 138, § 15, to sell at retail alcoholic beverages that are "not to be drunk on the premises" to citizens and residents of the Commonwealth.

As part of an Attorney General "sting" operation, an under-age decoy — a nineteen year old cooperating individual (CI) — ordered wine from wine.com over the Internet. To place her order, the CI opened an account with eVineyard, submitting her name, address, and a fictitious date of birth, which indicated that she was twenty-two years of age. She agreed to the Web site's terms of service, which state that wine will not be sold or delivered to persons under the age of twenty-one years.[2]

The CI's wine order was processed by eVineyard, and delivered to her by Federal Express, with whom eVineyard contracts for the delivery of all of its orders. In the contract, Federal Express agreed to deliver wine orders to customers in compliance with certain age verification requirements. eVineyard paid Federal Express an extra two dollars per delivery for its carriers to check identification and verify that each recipient is twenty-one

---

[1]Wine sold in Massachusetts is shipped to customers from the premises of eVineyard Retail Sales-Massachusetts, Inc. (eVineyard), in Avon. We refer to Wine.com, Inc. (wine.com), and eVineyard collectively as eVineyard.

[2]At five locations the Web site informs and warns viewers that the purchaser and recipient of wine must be at least twenty-one years of age. According to eVineyard, by using the Web site, and agreeing to its "terms of service," the purchaser acknowledges that she is twenty-one years of age or older and contracts with it not to use the Web site unless she is at least twenty-one years of age.

years of age or older.[3] eVineyard places labels on its packages informing the carrier that the packages contain alcohol and that a driver should not deliver the package to anyone under twenty-one years of age or visibly intoxicated, and that, if reasonable doubt about age exists, the driver should verify age and record the recipient's driver's license number or other identification. Federal Express also requires that certain labels be used on packages containing alcohol. Federal Express delivered the wine, in this case, to the underage CI without asking for identification or proof of age.

As a result of this and a second sting operation, eVineyard was administratively charged with two counts of violating G. L. c. 138, § 34, which prohibits the sale or delivery of alcohol to minors. The Alcoholic Beverages Control Commission (commission) held a hearing to assess whether eVineyard violated G. L. c. 138, § 34. The commission found that it had, and ordered a ten-day suspension of its license, five days for each violation. Only the first violation is before us.[4] Federal Express, which is separately licensed by the commission to "transport and deliver . . . alcoholic beverages" in the Commonwealth pursuant to G. L. c. 138, § 22, admitted responsibility for delivering to a minor, in connection with this same sale. Accordingly, Federal Express was found to have violated G. L. c. 138,

---

[3]The agreement between Federal Express and eVineyard, which lays out the conditions for shipping with Federal Express Ground, provides that the customer (eVineyard) may not ship alcohol to anyone under the age of twenty-one years, and that the customer agrees to "indemnify, defend and hold harmless" Federal Express for "any and all claims, losses, damages, fine, costs, expenses and judgments . . . arising out of or related to Customer's non-compliance with the above." The agreement also provides that Federal Express is not eVineyard's agent.

[4]The Attorney General's second sting operation appeared to yield results similar to the first. eVineyard was charged with both violations, while Federal Express was only charged with the first. eVineyard filed a motion to dismiss the second violation, arguing that because Federal Express had not been charged, it could not defend itself, as it had no knowledge of the conditions of delivery. The Alcoholic Beverages Control Commission (commission) took the motion under advisement, and heard evidence only as to the first violation. However, in its decision, it found both violations, and ordered a five-day suspension for each. In light of the inadequate record, the Superior Court judge vacated the violation order concerning the second violation, and the commission did not appeal. Thus, only the first violation is before us.

§ 34, and the commission ordered a three-day suspension of its license to deliver alcohol.

eVineyard filed a petition for review of the commission's decision in the Superior Court, pursuant to G. L. c. 30A, § 14, challenging the finding of a violation, and, in the alternative, contending that it was entrapped into violating the law. A Superior Court judge allowed eVineyard's motion for judgment on the pleadings, concluding that the "single wrong that violated the spirit of G. L. c. 138, § 34," was the delivery of wine by Federal Express. We transferred the commission's appeal to this court on our own motion. We reverse.

*Scope of review.* "The scope of review of the commission's decision, both in the Superior Court and in [the appellate courts], is defined by G. L. c. 30A, § 14." *Howard Johnson Co.* v. *Alcoholic Beverages Control Comm'n*, 24 Mass. App. Ct. 487, 490 (1987), quoting *Burlington* v. *Labor Relations Comm'n*, 390 Mass. 157, 161 (1983). A decision may be set aside if "the substantial rights of any party may have been prejudiced" because it is based on an error of law or on an unlawful procedure, is arbitrary or capricious, is unwarranted by the facts found by the agency, is unconstitutional, is in excess of statutory authority or jurisdiction, or is not supported by substantial evidence. G. L. c. 30A, § 14 (7). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6).

"Our review of the commission's decisions under the Liquor Control Act, G. L. c. 138, is undertaken within the context of the commission's considerable statutory powers." *BAA Mass., Inc.* v. *Alcoholic Beverages Control Comm'n*, 49 Mass. App. Ct. 839, 842 (2000). General Laws c. 10, § 71, confers on the commission "general supervision of the conduct of the business of . . . selling alcoholic beverages." The commission also has "comprehensive powers of supervision over licensees, including the power to revoke, modify, or suspend licenses." *Howard Johnson Co.* v. *Alcoholic Beverages Control Comm'n, supra* at 491, citing G. L. c. 138, § 23.

The reviewing court may not substitute its judgment on questions of fact for that of the agency. *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n*, 372 Mass. 152,

154 (1977). When questions of law are at issue, we exercise de novo review, giving "substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration [and] enforcement." *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006).

*Mootness.* eVineyard first argues that the suspension imposed on it is unenforceable because the license it was holding at the time of the violation, March of 2004, expired, and it subsequently obtained a new license.[5] Consequently, it contends, the commission's decision is moot. We disagree.

General Laws c. 138, § 15, authorizes the issuance of licenses for the sale of alcohol, at retail, for consumption off the premises.[6] Such a license is renewed annually. *Id.*

The suspension of a license does not merely impact the actual license held by the licensee; it impacts the licensee's right to hold a license. See *Wang* v. *Board of Registration in Med.*, 405 Mass. 15, 19 (1989) (revocation of registration revoked right to reestablish status as licensed physician in Massachusetts by completing renewal process). Whether through a new or renewed certificate issued by the licensing authority, a licensee obtains the privilege of selling alcoholic beverages. G. L. c. 138, §§ 15, 16A. See *Jubinville* v. *Jubinville*, 313 Mass. 103, 106 (1943) ("A liquor license once granted does not run with the business. It is a nontransferable personal privilege, revocable at pleasure, and conveying no vested interest to the licensee"). That privilege may be suspended at any time by the commission "upon satisfactory proof that [a licensee] has violated or permitted a violation

---

[5]Holders of alcoholic beverage licenses can have their licenses renewed for the next annual licensing period automatically, pursuant to G. L. c. 138, § 16A, if the licensee applies during November for the subsequent year. eVineyard claims that in November, 2006, it inadvertently failed to apply for a 2007 license. If the licensee fails to apply for renewal in accordance with the terms of the statute, another application "shall be treated as an application for a new license." G. L. c. 138, § 16A. eVineyard subsequently applied for and obtained a new license for 2007.

[6]In relevant part, G. L. c. 138, § 15, provides: "The local licensing authorities in any city or town which votes to authorize the granting of licenses for the sale of all alcoholic beverages . . . may grant licenses for the sale at retail of such alcoholic beverages . . . not to be drunk on the premises, to applicants therefor who are citizens and residents of the commonwealth . . . ."

of any condition thereof, or any law of the commonwealth."
G. L. c. 138, § 64. See G. L. c. 138, § 23.

eVineyard's position would allow a licensee facing suspension
to evade the sanction by allowing its former license to expire and
then obtaining a new one. This is plainly not what the Legislature
intended with regard to G. L. c. 138, § 64. Cf. *Perry* v. *Medical
Practice Bd.*, 169 Vt. 399, 404 (1999), and cases cited ("It is
well settled that a *licensee* may not evade disciplinary action
merely by resigning or allowing a license to expire. . . .
Otherwise, the licensee could apply for admission in another
jurisdiction, or subsequently reapply in the same jurisdiction, and
maintain that he or she has never been disciplined for profes-
sional misconduct." [Emphasis in original]).[7] The commission
may proceed to suspend a licensee's current license based on an
offense committed by it under its prior license.

*Statutory violation.* General Laws c. 138, § 34, makes it
unlawful for anyone to make "a sale *or* delivery of any alcoholic
beverage or alcohol to any person under 21 years of age" (em-
phasis added).[8] The statute evidences the Legislature's strong
policy against the sale of alcoholic beverages to minors. See
*Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 10-12
(1983); *Howard Johnson Co.* v. *Alcoholic Beverages Control
Comm'n*, 24 Mass. App. Ct. 487, 492-493 (1987). This policy is
consistently recognized in other provisions of G. L. c. 138,
including § 34A (prohibiting purchase of alcohol by persons

---

[7]The cases relied on by eVineyard to the contrary are inapposite. See *Com-
monwealth* v. *Murphy*, 68 Mass. App. Ct. 152, 153-154 (2007) (motorist who
operated outside hours allowed by "hardship license," obtained after previous
license was suspended, could be charged with violating hardship license but
not with driving on suspended license); *New Palm Gardens, Inc.* v. *Alcoholic
Beverages Control Comm'n*, 15 Mass. App. Ct. 963, 963-964 (1983) (finding
appeal from preliminary injunction enjoining denial of 1982 license moot
where, in interim, commission recommended issuance and, due to passage of
time, no license could be issued for 1982); INTMB, Inc. *vs.* Westborough,
Worcester Superior Court, No. 041814A (Sept. 29, 2004) (prior violations by
past license holder at same location irrelevant to current license violations
against new license holder).

[8]In relevant part, G. L. c. 138, § 34, provides: "Whoever makes a sale or
delivery of any alcoholic beverage or alcohol to any person under 21 years of
age, either for his own use or for the use of his parent or any other person
. . . shall be punished by a fine of not more than $2,000 or by imprisonment
for not more than one year or both."

under age of twenty-one years and misrepresentation of age), § 34B (requiring identification cards), and § 34C (prohibiting transportation of alcohol by minor). The purpose of these provisions is to protect the welfare of minors from the danger of alcohol. See *Fran's Lunch, Inc.* v. *Alcoholic Beverages Control Comm'n*, 45 Mass. App. Ct. 663, 664 (1998).

It is well settled that a "statute is to be construed as written, in keeping with its plain meaning." *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 289 (2001), and cases cited. The plain language of the statute is unambiguous: it forbids both the sale and the delivery of alcohol to minors.[9] The commission's interpretation of the statute as allowing it to proceed separately against both the licensed seller of alcohol, eVineyard, and the licensed deliverer, Federal Express, accords with the statute's language and with its legislative intent.

There is no question in this case that both a sale and a delivery of alcohol was made to a person under the age of twenty-one years in violation of G. L. c. 138, § 34. Nor is there any question that eVineyard was responsible for both: the order was taken by eVineyard, payment was received and accepted by eVineyard, and delivery was effectuated by eVineyard through its delivery contract with Federal Express.[10] eVineyard cannot evade responsibility for making sales to minors, which it has an affirmative duty not to do, by delegating the task of delivery to a third party. Cf. *Miller Brewing Co.* v. *Alcoholic Beverages Control Comm'n*, 56 Mass. App. Ct. 801, 809-810 (2002) (beer supplier's license properly suspended because supplier had affirmative duty to sell only to licensed purchasers).[11]

*Entrapment.* The defense of entrapment rests on the notion

[9]eVineyard argues that G. L. c. 138, § 34, is a penal statute — one designed to enforce the law by punishing offenders instead of by enforcing restitution for those damaged — and that any ambiguity in its language should be strictly construed in favor of the defendant. See *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 686 (1986). Even if we were to assume that the statute is penal, the language of the statute is unambiguous.

[10]Consequently, we need not decide whether the "sale" took place at the time the order was accepted by eVineyard or only on delivery of the wine by Federal Express. In other words, we are not presented with a situation where eVineyard is charged with violating the statute by accepting orders from minors over the Internet, where no alcohol is in fact ever delivered to such persons.

[11]General Laws c. 138, § 34B, provides a safe harbor for licensees who

that a defendant should not be punished for violations that arise out of law enforcement efforts to instigate criminal behavior and lure "otherwise innocent" persons to commit crimes. See *Sorrells* v. *United States*, 287 U.S. 435, 448-449 (1932). The law of entrapment focuses on whether the government induced the crime, and if so, whether the defendant was predisposed to commit it. *Commonwealth* v. *Shuman*, 391 Mass. 345, 351 (1984). eVineyard contends that the sting operation at issue resulted in its first offense, and that there was no evidence that it had a predisposition to sell to minors. It also argues that the CI wrongfully misrepresented her age on the eVineyard Web site, in violation of the commission's investigative guidelines that prohibit decoys from lying about their age.[12] We reject these arguments.

To raise an entrapment defense properly, eVineyard must produce evidence of government inducement. Solicitation by a government agent alone is insufficient to show inducement. *Commonwealth* v. *Shuman, supra.* eVineyard has shown nothing more than solicitation. *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299, 317-318 (1981) (no entrapment where undercover State police detective went to doctor nine times falsely asserting that he could not sleep, and doctor prescribed, in all but one visit, controlled substances that were prohibited other than for legitimate medical purposes).

Moreover, even if we were to reach the issue of predisposi-

unknowingly sell or deliver alcohol to minors but only if they have "reasonably relie[d] on . . . a liquor purchase identification card or motor vehicle license . . . or on a valid passport . . . for proof of a person's identity and age." The transaction in this case did not fall within the safe harbor because none of the acceptable forms of identification was sought either at the time of the acceptance of the order or at the time the alcohol was delivered to the CI. If Federal Express had reasonably relied on the forms of identification set forth in the statute at the time it delivered the wine, we would be presented with a very different situation. To the extent that the safe harbor provisions would have protected Federal Express from liability under G. L. c. 138, § 34B, we see no reason why that protection would not ordinarily extend to the Internet seller (here, eVineyard), at least in the circumstances of this case.

[12]The commission's guidelines to "be used when conducting underage drinking stings on licensed premises" provide that "[a]t no time shall the underage person attempt to misrepresent their [*sic*] age or provide any identification. . . . If asked for identification, the underage person should leave the establishment."

450 Mass. 825 (2008)                                    833

eVineyard Retail Sales-Massachusetts, Inc. *v.* Alcoholic Beverages Control Commission.

tion, we agree with the commission that in the absence of a scienter requirement in the statutes, the "question is not whether eVineyard was predisposed to sell alcohol to persons whom it knew to be underage, but whether eVineyard's [Internet] practices evidenced a willingness to sell alcohol in a manner that could allow minors to make purchases by the simple expedience of misrepresenting their age."[13]

Finally, the operation was conducted by the Attorney General's office in compliance with its own guidelines for sting operations concerning Internet alcohol sales to minors. These guidelines allow decoys to misrepresent their age when ordering alcohol via the Internet,[14] but prevent them from transmitting by facsimile or otherwise providing false identification documents to an Internet retailer. The commission's on-premises guidelines are inapplicable to remote, Internet-based, sting operations, particularly when conducted by the Attorney General's office. Cf. *BAA Mass., Inc.* v. *Alcoholic Beverages Control Comm'n*, 49 Mass. App. Ct. 839, 846 (2000) (telephone orders).

Because the sting operation was conducted in accordance with applicable guidelines and free of entrapment, the commission properly relied on the evidence obtained from it in suspending eVineyard's license. *Fran's Lunch, Inc.* v. *Alcoholic Beverages Control Comm'n*, *supra* at 665. The judgment entered in the Superior Court is reversed in part, and the decision of the commission suspending eVineyard's license for five days is affirmed.

*So ordered.*

---

[13]General Laws c. 138, § 34, has no scienter requirement. See *Commonwealth* v. *Joslin*, 158 Mass. 482, 495 (1893); *Commonwealth* v. *Montalvo*, 50 Mass. App. Ct. 85, 87-88 (2000).

[14]They instruct the decoys to respond to any question received via the Internet about their date of birth with a birth date that corresponds to the age of twenty-two years.