NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-240                                      Appeals Court


  RK&E CORPORATION[1]  vs.  ALCOHOLIC BEVERAGES CONTROL COMMISSION
                          & others.[2]


                        No. 19-P-240.

       Suffolk.    February 13, 2020. - April 21, 2020.

           Present:  Maldonado, Blake, & Lemire, JJ.



Alcoholic Liquors, Alcoholic Beverages Control Commission,
     License.  Gaming.


     Civil action commenced in the Superior Court Department on
June 7, 2017.

     The case was heard by Robert N. Tochka, J., on motions for
judgment on the pleadings.


     James J. Cipoletta for the plaintiff.
     Amy Spector, Assistant Attorney General, for the
defendants.


     BLAKE, J.  Following an undercover investigation, defendant

Alcoholic Beverages Control Commission (ABCC) suspended the

_____

        [1] Doing business as BK's Bar and Grill.

        [2] Jean Lorizio, as chairwoman, and Elizabeth Lashway and
Kathleen McNally, as members of the Alcoholic Beverages Control
Commission.

alcohol license that it had issued to the plaintiff, RK&E Corporation (RK&E), doing business as BK's Bar and Grill (BK's) in Revere.[3]  The ABCC found that RK&E was in violation of the terms of its alcohol license for allowing gambling at its establishment.  In addition to the suspension, the ABCC ordered that RK&E "not possess in or on the licensed premises any automatic amusement devices or video poker machines."  RK&E filed a complaint in the Superior Court pursuant to G. L. c. 30A, § 14, challenging the ABCC's authority to impose such a condition on its alcohol license.  After a hearing, the judge denied RK&E's motion for judgment on the pleadings and allowed the defendants' cross motion.[4]  This appeal followed.  We affirm.

The investigation.  RK&E holds a seven-day all alcoholic beverages license granted by the ABCC pursuant to G. L. c. 138, § 12.[5]  RK&E holds a separate automatic amusement device license issued by the Revere Licensing Commission (RLC) that authorizes it to operate five automatic amusement devices for "the

---

[3] The ABCC suspended RK&E's license for five days, with two days to be served and the balance held in abeyance for two years.  RK&E did not contest the suspension in the Superior Court or on appeal before this court.

[4] The defendants did not file a cross motion for judgment on the pleadings.  However, pursuant to Superior Court Standing Order 1-96(4) (2017), the judge deemed their response to include a cross motion and acted thereon.

[5] The local licensing authority also issued an alcohol license to RK&E.

entertainment of patrons," pursuant to G. L. c. 140, § 177A.  On February 1, 2016, ABCC investigator Joseph DiCicco, working in an undercover capacity, went to BK's, where he sat at the bar, ordered a beer, and played Keno.  DiCicco noticed a back room with electronic video devices and signs stating that the machines were for amusement only.  He watched as the bartender, Tito, went into the back room, returned to the bar, took money out of a soft pouch, and then gave the money to a woman who came out of the back room.  In prior visits to BK's, DiCicco saw similar behavior by Tito as well as the bar manager, Marilyn Symmes.  On each occasion, DiCicco saw Tito or Symmes go into the back room when called by patrons, return to the bar, take cash out of the pouch that was stored in the beer cooler at the end of the bar, and return to the back room with the cash.  Based on his training and experience, DiCicco recognized that this behavior was consistent with gambling.

At approximately 2:30 P.M., DiCicco went to the back room where he saw three people using poker machines.  The room and the machines bore signs indicating that their use was for amusement or entertainment purposes only.  Each machine accepted United States currency, ranging from one dollar to twenty dollars, and had the capacity to choose an amount to bet, to raise the bet, and to double the bet.  The machines were not visible from most areas of BK's, and the back room where the

machines were located was equipped with surveillance cameras. DiCicco sat down and inserted six dollars into a machine. He played a few hands of poker, winning some and losing others. The device displayed a "bank" with amounts that changed based on wins and losses. When DiCicco's winnings reached forty-five dollars, the other patrons in the back room told him to cash out so that he could stay ahead. DiCicco then called Tito into the back room, where Tito verified the winnings and reset the bank to zero. Tito eventually gave DiCicco forty-five dollars in cash.

On the evening of August 19, 2016, three other ABCC investigators went to BK's. They too saw the five machines in the back room and the signs as described by DiCicco. After accumulating "dollars" on one of the machines, investigator Christopher Temple pressed the button marked "redeem" and then cleared the credits to zero. The investigators asked to speak to the manager. When asked, Symmes said the devices were for entertainment only and the bar did not make payouts.

The ABCC issued a notice of hearing to determine whether RK&E permitted gambling in violation of 204 Code Mass. Regs. § 2.05(1) (1993) (prohibiting gambling on premises of alcohol licensee), and permitted three illegalities in or on the premises in violation of 204 Code Mass. Regs. § 2.05(2) (1993) (prohibiting licensee from permitting illegality in or on

licensed premises), based on violation of three statutory provisions that prohibit gambling, G. L. c. 140, § 177A (6); G. L. c. 23K, § 37; and G. L. c. 271, § 17.  RK&E stipulated "to the facts written in the [i]nvestigative report" and acknowledged that by signing the stipulation, RK&E "admit[ted] to the violation(s) but reserve[d] the right to submit evidence and argue mitigation of the possible penalties."  A handwritten notation on the stipulation read, "204 CMR 2.05(2) permitting illegality."  Following the hearing, the ABCC issued a decision concluding that RK&E was in violation of the alcohol license regulations by permitting gambling and three illegalities on the licensed premises.[6]  The ABCC suspended RK&E's alcohol license for five days, with two days to serve and the balance held in abeyance for two years; the ABCC also ordered that RK&E "not possess in or on the licensed premises any automatic amusement devices or video poker machines."

Discussion.  RK&E contends that the ABCC did not have the authority to restrict or condition the alcohol license by prohibiting the possession of automatic amusement devices or video poker machines because RK&E had an amusement device

_____

[6] On the same day that the ABCC issued its decision, it notified RK&E that RK&E could petition the ABCC, within twenty days, to accept an offer in compromise in the form of a statutorily calculated fine in lieu of serving the suspension. RK&E submitted an offer more than twenty days later, but the ABCC rejected it as untimely.

license issued by the RLC.  Put another way, RK&E contends that the prohibition is an unlawful restriction on its separate amusement device license.  We disagree.

Judicial review of the ABCC's decision is limited to determining whether the decision was arbitrary and capricious or whether the ABCC made an error of law.  See Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 511-512 (2020).  See also G. L. c. 30A, § 14 (7) (g).  Pursuant to G. L. c. 30A, § 14 (5), our review is confined to the administrative record.  We do not substitute our judgment for that of the ABCC.  See Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016).

It is undisputed that RK&E allowed the amusement devices at BK's to be used for gambling, in violation of State law and regulations promulgated by the ABCC and published in the Code of Massachusetts Regulations.  Indeed, RK&E stipulated that it violated 204 Code Mass. Regs. § 2.05(2), which prohibits any illegality.  Despite this, RK&E argues that the ABCC was not authorized to prohibit amusement devices at BK's as a condition of RK&E's alcohol license, because, as RK&E claims, only the local licensing authority, RLC, can suspend or revoke RK&E's amusement device license.[7]  This argument overlooks the fact that

---

[7] The RLC had the authority to revoke or suspend RK&E's amusement device license pursuant to G. L. c. 140, § 177A (1).

the ABCC did not suspend the amusement device license issued by the RLC. To the contrary, the ABCC added a condition to the alcohol license that the ABCC itself had issued. Alcohol licenses are a "special privilege subject to public regulation and control." Hasting Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 173-174 (1997). Moreover, the ABCC's power to approve or disapprove of a license carries with it the power to grant the license on some condition, as the ABCC did here. See eVineyard Retail Sales-Mass., Inc. v. Alcoholic Beverages Control Comm'n, 450 Mass. 825, 828 (2008) ("General Laws c. 10, § 71, confers on the [ABCC] 'general supervision of the conduct of the business of . . . selling alcoholic beverages.' The [ABCC] also has 'comprehensive powers of supervision over licensees, including the power to revoke, modify, or suspend licenses'" [citation omitted]). See also G. L. c. 138, § 23 ("Whenever, in the opinion of the [ABCC], any holder of a license or permit originally issued by it fails to maintain compliance with the requirements of this chapter, or any other reasonable requirements which it may from time to time make with respect to any such license or permit or to the conduct of business by any such licensee or permittee, it may,

---

That the RLC did not do so does not impact the independent authority of the ABCC to take action on the license the ABCC issued for the misuse of the machines licensed by the RLC.

after hearing or opportunity therefor, modify, suspend, revoke
or cancel such license or permit").

Here, the ABCC, in meting out discipline, had several
options, ranging from a warning with a directive to comply with
existing law to the complete revocation of RK&E's alcohol
license.  In the circumstances of this case, a sanction
directing that RK&E comply with the law and cease gambling would
not be effective, as it was RK&E's failure to comply with the
law by permitting gambling that resulted in the challenged
sanction.  Here, the prohibition of automatic amusement devices
or video poker machines on the premises is a less harsh and
reasonable alternative to a more substantial suspension or a
total revocation of RK&E's alcohol license.[8]  Pursuant to G. L.
c. 138, § 64, the ABCC has broad authority over the licenses it
issues and may attach a condition to a license following
suspension so long as the condition is reasonably related to

_____

[8] At oral argument, a question was raised whether the
prohibition was intended to include "any automatic amusement
devices" or whether it was limited to the five video poker
machines at issue.  Pursuant to Mass. R. A. P. 22 (c) (2), as
appearing in 481 Mass. 1651 (2019), the ABCC clarified that the
condition was intended to cover all devices because, in ABCC's
view, "any amusement device could be used for illegal gambling."
In any event, both in the Superior Court and here, RK&E did not
differentiate between the five video poker machines and any
amusement device -- focusing its challenge instead on the ABCC's
authority to prohibit the use of amusement device machines
authorized by the RLC.  Accordingly, we express no view on the
breadth of the automatic amusement device prohibition in the
ABCC's decision, and we do not disturb it.

preventing the unlawful practice at the licensed premises.  See Massachusetts Fed'n of Teachers v. Board of Educ., 436 Mass. 763, 775 (2002) (challenged regulations were reasonably related to purposes of enabling legislation; thus, their promulgation was valid exercise of board's authority).  The condition imposed is reasonably related to the illegal conduct of gambling and therefore is a permissible sanction.  Put another way, the ABCC has the authority to revoke or suspend an alcohol license it issued for violations of the law that do not directly relate to the business of alcoholic beverages.  See Vaspourakan, Ltd. v. Alcoholic Beverages Control Comm'n, 401 Mass. 347, 350, 354-355 (1987) (alcohol license revocation for violation of antidiscrimination statute was not disproportionate penalty); Rum Runners, Inc. v. Alcoholic Beverages Control Comm'n, 43 Mass. App. Ct. 248, 249-250 (1997) (permissible to suspend license for permitting violations of Controlled Substances Act).  It therefore follows that the ABCC has the authority to add conditions to an alcohol license that the ABCC issued, as it did here.  Indeed, G. L. c. 138, § 64, empowers the ABCC to place a condition on an alcohol license for violation of any State law. The actions of the ABCC did not impermissibly usurp the authority of the RLC.

Judgment affirmed.