NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-805                                        Appeals Court


        MELISSA PIXLEY & others[1] vs.  COMMISSIONER OF REVENUE.


                        No. 21-P-805.

        Berkshire.      October 6, 2022. – June 22, 2023.

          Present:  Green, C.J., Henry, & Englander, JJ.



Cellular Telephone.  Taxation, Sales tax, Commissioner of
     revenue.  Commissioner of Revenue.  Declaratory Relief.
     Practice, Civil, Declaratory proceeding.




     Civil action commenced in the Superior Court Department on
July 7, 2017.

     A motion to dismiss was heard by John A. Agostini, J., and
entry of separate and final judgment was ordered by him.


     Jeffrey S. Morneau for the taxpayers.
     Richard S. Weitzel, Assistant Attorney General, for
Commissioner of Revenue.


     ENGLANDER, J.  This case concerns the sales tax that is

collected in a transaction where the consumer purchases a

discounted cell phone, bundled with the consumer's agreement to

_____

        [1] William Harrington, Jr., and William Hillman.

use a carrier's wireless services for a period into the future. Pursuant to Department of Revenue Directive 11-2, issued in 2011, the sales tax assessed on the cell phone purchased in such a "bundled transaction" is based upon the <u>higher</u> of the phone's wholesale cost to the carrier, or the cash price the consumer actually pays.

The plaintiffs in this purported class action are consumers who purchased cell phones in such bundled transactions, and they challenge the directive, and the tax imposed, on the ground (among others) that the taxes imposed on the cell phone and the wireless services exceed the authority of the Commissioner of Revenue (commissioner) under the sales tax statute, G. L. c. 64H. The thrust of the plaintiffs' argument is that the directive causes consumers in such bundled transactions to pay a tax on more than the price they paid for the cell phone and the services. For his part, the commissioner concedes that a tax is assessed on more than the consumer pays in money; the commissioner justifies the tax, however, on the theory that the cell phone and services contract have a taxable value apart from the money the consumer actually pays. For the reasons that follow, we agree that the directive is contrary to the statutory definition of the price that is subject to sales tax under G. L. c. 64H, § 1, and that the plaintiffs are entitled to a declaratory judgment so stating.

Background.  1.  General Laws c. 64H.  Sales taxes in Massachusetts are governed by G. L. c. 64H.  Section 2 of that chapter mandates a 6.25 percent tax on retail sales of tangible personal property and services.  The tax is based on a vendor's "gross receipts" from "sales at retail," which the statute defines as "the total sales price received by a vendor as . . . consideration."  G. L. c. 64H, §§ 1, 2.  In turn, the statute defines "sales price" as "the total amount paid by a purchaser to a vendor as consideration for a retail sale, valued in money or otherwise."  G. L. c. 64H, § 1.  This case concerns an aspect of how one determines the "sales price" of the property or services that are subject to tax.

In practice, and as required by the statute, payment of the sales tax involves the following steps.  When a vendor purchases an item from a wholesaler to resell it to a consumer, the vendor gives the wholesaler a resale certificate stating that the item is being purchased for resale, so that the vendor does not have to pay the sales tax at that time.  See G. L. c. 64H, § 8 (a).  At the time of the retail sale, the vendor collects reimbursement for the sales tax from the consumer and, later, remits the sales tax to the commissioner.  See G. L. c. 64H, §§ 2, 3.  However, if the vendor makes any use of the item "other than retention, demonstration or display while holding it for sale in the regular course of business," then the vendor in

effect becomes the consumer of the item, and must itself pay the sales tax, measured by the wholesale cost of the item.  G. L. c. 64H, § 8 (d).

2.  830 Code Mass. Regs. § 64H.1.4.  When a vendor uses the item itself, it is easy enough to treat the vendor as the consumer for sales tax purposes.  Issues naturally arise, however, when the vendor resells or transfers an item to a consumer for no consideration, or at a substantial loss or discount below the wholesale cost, typically as part of a promotion.  In 2000, the Department of Revenue (department) promulgated 830 Code Mass. Regs. § 64H.1.4 (regulation) to address the sales tax on promotional items.  The regulation provides that where a vendor sells an item to a retail consumer at substantially below cost, or for no or nominal consideration, the item "constitutes a promotional item for sales tax purposes," "the vendor is considered its consumer," and the vendor must pay the sales tax based on the wholesale cost of the item.  830 Code Mass. Regs. § 64H.1.4(1) (2000).  The regulation permits the vendor to "claim a credit for any tax collected from the retail consumer."  Id.

3.  Directive 11-2.  That brings us to the "bundled" transactions at issue here, by which consumers purchase cell phones but also agree to purchase wireless services for a period into the future.  In such transactions, the price the vendor

assigns to the sale of the cell phone is often below wholesale cost, or even free. In 2011, the department issued guidance -- in the form of a directive -- specifically to address the sales tax on cell phones sold in such bundled transactions. See Department of Revenue Directive 11-2 (April 27, 2011) (directive 11-2). Directive 11-2 provides that the sales price of a cell phone sold in a bundled transaction is the higher of either the cash price paid or the cell phone's wholesale cost, and that the sales tax must be paid on that amount. The directive also permits wireless service carriers and independent retailers to collect from their customers the full amount of the sales tax, even when the sales tax is based on the wholesale cost of a cell phone.[2] Directive 11-2 is the directive that the plaintiffs challenge.[3]

---

[2] Directive 11-2 specifically provides as follows:

"In situations where the wholesale cost of the phone or other device is used for calculating the tax (because it is higher than the amount paid by the customer), the seller may collect and remit tax from the customer on the wholesale cost. Alternatively, the vendor may elect to assume a portion of the tax by collecting tax from the customer only on the lesser amount actually paid by the customer, in which case, the vendor must also remit tax on the difference between that lesser amount and the wholesale cost" (footnote omitted).

[3] Previously, pursuant to two other directives, Department of Revenue Directive 93-9 (December 23, 1993) (directive 93-9) and Department of Revenue Directive 94-2 (February 4, 1994) (directive 94-2), the department treated wireless service carriers and independent retailers differently in determining

Procedural history.  In July of 2017, the plaintiffs filed a complaint against the commissioner and various cell phone vendors.[4]  As against the commissioner, the complaint alleged that (1) directive 11-2 is invalid because it conflicts with G. L. c. 64H, § 2, as that statute provides that the sales tax is to be imposed on "gross receipts," and (2) directive 11-2 is a regulation that was not properly promulgated in accordance with the notice and comment requirements of the Administrative Procedure Act, G. L. c. 30A.

The plaintiffs asserted six claims against the commissioner.  Counts I through IV alleged that the commissioner had received excess sales tax, which the plaintiffs sought to recover.[5]  Count V sought declaratory as well as injunctive relief -- for example, a declaration that directive 11-2 is

---

the sales tax on cell phones sold in bundled transactions, although in each instance the commissioner sought to collect a tax at least on the wholesale cost of the cell phone.  Seventeen years after issuing directives 93-9 and 94-2, the department decided that it no longer made sense to treat wireless service carriers and independent retailers differently, given that "business models in the industry [had] evolved."  Directive 11-2.  Accordingly, the department issued directive 11-2.

[4] Following the dismissal of the claims against the commissioner, the plaintiffs and cell phone vendors stipulated to dismissal of the plaintiffs' claims against the cell phone vendors, without prejudice, and those claims are not at issue in this appeal.

[5] Counts I through IV were for the following:  money had and received (count I), unjust enrichment (count II), accounting (count III), and constructive trust (count IV).

"void and unenforceable," and an injunction ordering the commissioner to "grant all refund requests made by any vendor or [the] [p]laintiffs and the [c]lass with regard to excess sales tax paid by them." Finally, count VI alleged violations of the Administrative Procedure Act.

The commissioner filed a motion to dismiss for failure to state a claim upon which relief could be granted, and in February 2018, a Superior Court judge allowed the motion. The motion judge concluded that directive 11-2 is consistent with the statutory and regulatory scheme, and that it is not a "regulation" that was required to go through the notice and comment requirements of the Administrative Procedure Act. The plaintiffs appeal, and we now reverse so much of the judgment as dismissed the plaintiffs' claim for a declaratory judgment.

Discussion. As indicated, the sales tax statute taxes the vendor on the "gross receipts" the vendor receives from "sales at retail." G. L. c. 64H, § 2. "Gross receipts" is defined, in turn, as "the total sales price received by a vendor as . . . consideration" (emphasis added). G. L. c. 64H, § 1. As described below, directive 11-2 is at odds with this statutory definition, because it directs the collection of a tax on more than the "total sales price received" by the vendor. To the extent the plaintiffs seek a declaratory judgment that the

directive is invalid, the motion to dismiss should not have been granted.[6]

_____

[6] This case presents significant issues with respect to what relief the plaintiffs may be entitled to, even where the commissioner's directive leads to an ultra vires tax. As the Commonwealth points out, the plaintiffs are not the statutory taxpayers; the vendors are the ones required to remit the tax to the Commonwealth. Several of the counts of the plaintiffs' complaint seek relief that would have the commissioner making payments to the plaintiffs. We agree with the commissioner that such relief is not available to the plaintiffs, where they are not the taxpayers and particularly where there is no indication that anyone filed tax abatement applications. See Worldwide TechServs., LLC v. Commissioner of Revenue, 479 Mass. 20, 30-31 (2018). Counts I through IV of the complaint accordingly were properly dismissed.

The plaintiffs' claim for declaratory judgment stands on a different footing, however. The Supreme Judicial Court has held that such relief can be available, notwithstanding G. L. c. 62C, § 41's, limitation of remedies to those appearing in G. L. c. 62C, §§ 37-40. See Green v. Commissioner of Corps. & Taxation, 364 Mass. 389, 390 (1973) (limitation does not "prevent courts of equity, as a discretionary matter, from entertaining bills for declaratory relief"). And as noted, the plaintiffs here are not the taxpayers and thus are not entitled to seek an abatement under the statutory scheme. See Worldwide TechServs., LLC, 479 Mass. at 31. Under these circumstances, where the question presented is a question of law, the plaintiffs are the parties that ultimately pay the tax, and the plaintiffs otherwise would have no sure avenue to challenge the legality of the tax, it is appropriate to entertain the plaintiffs' request for a declaratory judgment. See Bettigole v. Assessors of Springfield, 343 Mass. 223, 235 (1961) ("where the plaintiffs show that they themselves will be directly and adversely affected by the imposition of the tax, a declaration may be made whether and to what extent a tax affects the rights of the parties to the particular case").

The plaintiffs' request for injunctive relief suffers from many of the same problems as counts I through IV, but given our resolution herein, the claim for injunctive relief should be addressed by the judge on remand.

A straightforward hypothetical transaction illustrates the commissioner's error. Assume the consumer enters into a so-called "bundled transaction"[7] where he or she pays $100 for a cell phone, and also signs a two-year contract to use the vendor's wireless services, at $100 per month. Assume further that the wholesale cost of the cell phone was actually $600. Over the course of the two-year agreement, the consumer will pay the vendor $2,500 ($100 for the cell phone, plus twenty-four times $100 per month). Under the directive, however, the Commonwealth will tax the phone at its wholesale cost, and also tax the services as they are rendered and paid for. See directive 11-2 (noting bundled transactions include "taxable telecommunications services"). See also G. L. c. 64H, § 2 (tax imposed on "sales at retail . . . of services" [emphasis added]). The Commonwealth thus will receive a sales tax on $3,000 in purported sales ($600 plus $2,400), even though the consumer only paid $2,500. And this entire tax will likely be passed onto the consumer, who then pays a tax on more than he or she paid for the "bundled transaction." See directive 11-2

---

[7] Directive 11-2 defines a "bundled transaction" as "a sale of a cellular telephone or other wireless communication device in which the customer gets a reduced price on the phone or device if he or she enters into a contract including telecommunications services at the time the phone or device is purchased, including renewals, upgrades and modifications to existing service contracts."

(vendor must remit tax, and can then "collect part or all of that tax from the retail customer").

Directive 11-2 does not confront this issue, nor does the commissioner in his brief to this court. Neither mentions that the payments the consumer makes for wireless services under the "bundled" contract are also subject to sales tax, nor does the commissioner acknowledge, directly, that he is taxing more than the total money the consumer pays across the entire transaction. But the commissioner nevertheless attempts to justify the directive based on the words "or otherwise" in the sales tax statute's definition of "sales price." That definition is: "the total amount paid by a purchaser to a vendor as consideration for a retail sale, valued in money or otherwise" (emphasis added). G. L. c. 64H, § 1. According to the commissioner, in a bundled transaction, the consumer is not just paying money (for both the cell phone and twenty-four months of services), but is also providing additional "consideration of substantial value . . . in non-cash form." At oral argument, the commissioner suggested that this additional value arises from the consumer's contractual commitment, and the dissent adopts that view here. See post at  (arguing taxable "consideration" is "the contractual commitment to purchase wireless services . . . for a minimum period of time"). Thus,

the argument is that this "contractual commitment" has nonmonetary ("or otherwise") value that is separately taxable.

As applied to a bundled cell phone transaction, this nonmonetary "consideration" theory is both unprecedented, and incorrect. The consumer is paying money -- that is all. The two-year contractual commitment is to pay money for services; that monetary payment is fully taxed. See G. L. c. 64H, § 2. There is no additional consideration coming from the consumer that otherwise goes untaxed. This is not a situation where the consumer is providing value to the seller in a nonmonetary form -- for example, some kind of barter. This is not a situation in which a store sells jewelry to a consumer for $300, but reduces the price by $100 based on the value of other jewelry a consumer provides in trade. In that circumstance, the sales price for tax purposes is $300, even though the consumer only paid $200 in money. The "or otherwise" clause exists to cover those nonmonetary payment situations, but it does not apply where all the consideration the consumer gives is money.[8]

---

[8] The dissent suggests that we should be "deferring," see post at    , to the commissioner's position, but no deference is appropriate where, as here, the commissioner's position is at odds with the language of the statute. See, e.g., Duarte v. Commissioner of Revenue, 451 Mass. 399, 411 (2008), quoting Telles v. Commissioner of Ins., 410 Mass. 560, 564 (1991) ("agency 'has no authority to promulgate rules and regulations which are in conflict with the statutes or exceed the authority conferred by the statutes' under which the agency operates"); Tartarini v. Department of Mental Retardation, 82 Mass. App. Ct.

In this case the commissioner and the dissent do not point to any tangible "or otherwise" payment, but instead claim that the consumer's contractual "commitment" itself has intrinsic taxable value.  The concept finds no support in the statutory language, the case law, or other authority.  From the vendor's perspective, the "commitment" may indeed have intangible value, but only if that "commitment" results in new and <u>additional</u> sales -- for example, sales of ancillary goods or services, or a "re-up" of the contract after two years.  But the possibility that the consumer will enter into new and different contracts is not part of the "total amount <u>paid</u>" for the bundled transaction at issue (emphasis added).  G. L. c. 64H, § 1.  Such future possibilities are no more than customer goodwill, and nothing in the statutory language "total sales price," or the case law, suggests that the sales tax can be imposed on perceived customer goodwill arising from a sales transaction.[9]  And of course, if the consumer does in fact enter into a new contract (i.e., "re-up"), the monies paid for services under the new contract <u>will be taxed</u>.  See G. L. c. 64H, § 2.

---

217, 220 (2012) (principle "is one of deference, not abdication").

[9] This customer goodwill is what the dissent suggests is taxable, <u>post</u> at   , when it references that cell phone carriers "value . . . retaining customers," and controlling "churn."

It is true that if the sale of the cell phone below cost, and the sale of the wireless services, were actually two separate transactions, then the commissioner likely could justifiably tax the separate transactions at a greater total price than the amount paid by the consumer in a bundled transaction. But that is because if the cell phone were sold separately, below cost, the commissioner would treat the phone as a "promotional item" under 830 Code Mass. Regs. § 64H.1.4(1), and "the vendor is considered its consumer." In that circumstance the vendor pays the tax, "based upon the amount the vendor paid for the item" (i.e., the wholesale cost). 830 Code Mass. Regs. § 64H.1.4(1). Put differently, as two separate transactions, the consumer would not even be considered the purchaser of the cell phone, just of the services. However, there are not two transactions, but only one sale -- the "bundled" transaction -- and in that circumstance the tax must be on the total price that the consumer pays.[10]

---

[10] This conclusion flows from the concept of a "sale." The commissioner cannot deconstruct a single transaction into its component parts, in order to claim a tax on more than the consumer paid. Suppose, for example, that a consumer bought a car for $30,000, and the dealer also provided winter floor mats at "no additional charge." The commissioner could not impose a tax on the $30,000 sale, and also, separately tax the sale of the floor mats. Cf. 830 Code Mass. Regs. § 64H.1.4(2)(d) (2000) ("If a vendor offers customers . . . merchandise free of charge with the purchase of other merchandise. . . the sales price subject to tax is the amount the vendor charges the customer").

At the end of the day, the commissioner's position fails because the only thing the consumer is providing here is money, and all the monies the consumer pays will be taxed. Where the cell phone is sold below wholesale cost, the vendor must be making up the difference through the sale of wireless services, and perhaps additional ancillary goods or services -- the sales of all of which will be taxed if and when they occur (unless specifically exempt). Obviously, if the vendor does not make up for selling the cell phone below cost through additional sales, it will be operating at a loss, and the laws of business say that it will not be operating very long.

Finally, we note the unfairness to the consumer from the commissioner's directive. The sales tax law says that the tax is 6.25% of the price the consumer pays for a good or service. G. L. c. 64H, § 2. But under directive 11-2, in this specific class of transactions, the consumer is remitting tax at more than the price they paid. Because the directive conflicts with the statute it purports to carry out, the motion to dismiss should not have been allowed as to the plaintiffs' claim for declaratory judgment, and that portion of the judgment is reversed. The portion of the judgment dismissing the plaintiffs' claim for injunctive relief is vacated. The

judgment is otherwise affirmed.  The case is remanded for

further proceedings consistent with this opinion.[11]

<u>So ordered</u>.

---

[11] Deciding the case as we do, we need not address the plaintiffs' argument that the directive also is invalid because it is a "regulation" promulgated in violation of the Administrative Procedure Act.  See G. L. c. 30A, §§ 1, 3.

HENRY, J. (concurring in part and dissenting in part).  I agree with so much of the majority's decision as concludes that the plaintiffs are not entitled to any monetary recovery from the Commissioner of Revenue (commissioner).  See ante at   .  I disagree, however, with the remainder of the majority's decision, which rests on the unfounded assertion that when a consumer purchases a "bundled" cell phone, the consumer provides consideration in the form of money, and no other taxable consideration.[1]  However, the commissioner has concluded otherwise, specifically that the consumer provides other taxable consideration in the form of the contractual commitment to purchase wireless services from a designated carrier for a minimum period of time.  We review for whether the commissioner's conclusion can be reconciled with the governing legislation, and we afford substantial deference to agency expertise.  See Citrix Sys., Inc. v. Commissioner of Revenue, 484 Mass. 87, 94 (2020).  See also eVineyard Retail Sales-Mass., Inc. v. Alcohol Beverages Control Comm'n, 450 Mass. 825, 829 (2008).  The majority's decision is remarkable in that the

_____

[1] The majority asserts that in a bundled cell phone transaction, "[t]he consumer is paying money -- that is all" and "[t]here is no additional consideration coming from the consumer." Ante at   .  Later, the majority again asserts that "the only thing the consumer is providing here is money."  Ante at   .  The majority does not provide any evidentiary support for these assertions; where this case was decided on a motion to dismiss, there is no such evidence.

majority substitutes its opinion for that of the commissioner, and does so in a case decided on a motion to dismiss, without any evidentiary support.

At its core, the plaintiffs' lawsuit is based on the idea that Department of Revenue Directive 11-2 (April 27, 2011) (directive 11-2) conflicts with the statutory and regulatory scheme by permitting wireless service carriers and independent retailers to collect sales tax on amounts that are higher than the consideration paid in money for cell phones.  Giving appropriate deference to the commissioner, there is no conflict because (1) the statutory and regulatory scheme permits vendors to collect sales tax on forms of consideration other than money, and (2) the commissioner, in his expertise, has concluded that consumers purchasing bundled cell phones provide additional noncash consideration in the form of the commitment to purchase wireless services from a designated carrier.

As the majority notes, the statute imposes a tax on a vendor's "gross receipts," meaning the "total sales price," which the statute defines as "the total amount paid by a purchaser to a vendor as consideration for a retail sale, valued in money or otherwise" (emphasis added).  G. L. c. 64H, §§ 1, 2.[2]

_____

[2] Likewise, the statutory definition of "sale" expressly encompasses "barter" transactions.  See G. L. c. 64H, § 1 ("[i] any transfer of title or possession, or both, exchange, barter, lease, rental, conditional or otherwise, of tangible personal

In the context of a bundled cell phone transaction, the commissioner has concluded that the "or otherwise" clause includes consideration in the form of a consumer's commitment to purchase wireless services from a designated carrier. Especially where we have no evidence that this sort of agreement does not have value and should not be treated as taxable consideration, the commissioner's conclusion is a reasonable one to which we are required to give deference. See Citrix Sys., Inc., 484 Mass. at 94. See also eVineyard Retail Sales-Mass., Inc., 450 Mass. at 829.[3]

"The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." Marine Contrs. Co. v. Hurley, 365 Mass. 280, 286 (1974). A detriment "means giving up something which immediately prior thereto the promisee was privileged to retain,

---

property or the performance of services for a consideration, in any manner or by any means whatsoever . . .").

[3] According to the majority, the "or otherwise" clause applies only to forms of tangible consideration, such as when a store sells jewelry to a consumer for $300 but reduces the price by $100 based on the value of other jewelry the consumer provides in trade. However, the statute does not say "or other forms of tangible consideration," and we do not read words into a statute that are not there. See Beauchesne v. New England Neurological Assocs., P.C., 98 Mass. App. Ct. 716, 719 (2020). Indeed, in a regulation pertaining to the sales tax on cars, an example specifically provides that a consumer who pays for a car in services is taxed on the value of those services. See 830 Code Mass. Regs § 64H.25.1(5)(d) (1996) (example 5).

or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing" (quotation and citation omitted).  Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 42-43 (1970).  A benefit means "the receiving as the exchange for his promise of some performance or forbearance which the promisor was not previously entitled to receive" (quotation and citation omitted).  Id. at 43.

Here, the commissioner has concluded that, in exchange for a cell phone, a consumer provides consideration in the form of a commitment to purchase wireless services from a designated carrier.  That conclusion is reasonable where the commitment is a "detriment" to the consumer -- who by entering into the agreement gives up the right to switch wireless service carriers at will.  See Graphic Arts Finishers, Inc., 357 Mass. at 42-43.  Likewise, the commitment is a "benefit" to the carrier, who receives a binding promise that the consumer will use (and pay for) the carrier's wireless services for a minimum period of time.[4]  See id. at 43.  As explained by the commissioner, bundled cell phone transactions "would not have gained any traction as a business model unless vendors were receiving consideration of substantial value -- albeit in non-cash form -- to offset the

_____

[4] Where bundled cell phone transactions are made by independent retailers, the value of the commitment is passed on to the independent retailer in the form of a commission.  See Department of Revenue Directive 93-9 (December 23, 1993).

substantial cash price discount on the phone itself. Otherwise, they would be operating at a loss." This is a reasonable conclusion that explains why vendors would regularly sell cell phones at a cash price far below even wholesale cost. It should be given deference.

The majority concludes otherwise, despite the lack of any evidence in the record to support its view. In particular, the majority improperly speculates on the economics of the cell phone industry. The majority assumes that a consumer's commitment to purchase wireless services from a designated carrier has value only insofar as it results in more sales, and that vendors "obviously" compensate for selling cell phones below cost by making these additional sales.[5] Ante at   .

---

[5] The majority also implies that a cell phone sold in a bundled transaction is a "freebie" and cites 830 Code Mass. Regs. § 64H.1.4(2)(d) (2000) for the proposition that, to the extent a vendor gives away a cell phone as part of a larger sale, the cell phone cannot be taxed separately. Ante at note 10. However, in a bundled cell phone transaction, the vendor does not give away the cell phone as part of a larger sale; the cell phone is the item being sold. The question we are asked to decide is how much consideration the consumer provides for the cell phone, and 830 Code Mass. Regs. § 64H.1.4(2)(d) does not answer that question. The majority's view seems to be based on the belief that the vendor gives away the cell phone as part of a transaction also involving the sale of wireless services. But in a bundled cell phone transaction, there is no sale of wireless services; there is only the sale of a cell phone coupled with a contractual commitment to purchase wireless services. The wireless services are sold later, in a separate transaction. While the distinction may seem insubstantial, it is not, as a contractual commitment to purchase wireless services does not guarantee that those sales actually will

Despite the majority's unsupported assertion that its conclusion regarding the economics of the cell phone industry is obvious, another explanation could be that cell phone carriers place value on retaining customers and that their rate of attrition (or "customer churn") is a significant issue for the industry. See Mozer, Wolniewicz, Grimes, Johnson & Kaushansky, Churn Reduction in the Wireless Industry, 12 Advances in Neural Information Processing Systems 935 (MIT Press 2000) ("Competition in the wireless telecommunications industry is rampant. To maintain profitability, wireless carriers must control churn, the loss of subscribers who switch from one carrier to another"). However, we need not speculate on the economics of the cell phone industry. Suffice it to say that the cell phone sale would not occur at the discounted price without the contract, so the commissioner could and reasonably did conclude that contractual commitment may stand as a justification to tax the sale of the cell phone at the full wholesale price, despite the discount.

The majority also provides an example where a consumer enters into bundled cell phone transaction and pays $100 for a $600 cell phone and signs a two-year contract for wireless

---

occur. In other words, this is not a situation in which a consumer prepays for two years of wireless services and, in exchange, a vendor gives the consumer a cell phone, which would present different economic realities.

services costing $100 per month, for a total of $2,500; as the majority notes, under directive 11-2, the consumer will pay tax on $3,000. See ante at   . This example does not advance the majority's position because the example does not grapple with the commissioner's conclusion that the consumer provides additional noncash compensation in the form of the commitment to purchase wireless services.

Moreover, there is no inherent unfairness to the consumer in having to pay sales tax on more than the cash paid. Vendors set the cash prices for bundled cell phones artificially and unrealistically low given the additional consideration also provided.[6] The majority's conclusion, that the consumer should pay sales tax on nothing more than the unrealistically low cash price, means that the consumer will avoid paying sales tax on the full value of the transaction.[7] Ordinarily, our tax laws prevent this sort of outcome. See, e.g., 830 Code Mass. Regs.

---

[6] For instance, one of the plaintiffs purchased a cell phone in a bundled transaction with a wholesale cost of $450 but paid a discounted price of only ninety-nine cents. See Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 378 (2019) (courts "must avoid any construction of statutory language which leads to an absurd result" [quotation and citation omitted]).

[7] This is not a situation where a vendor offers a steep discount on its goods as part of a holiday sale, where the full value of the transaction does equal the cash price paid. This is a business model built around selling cell phones for low cash payments combined with another form of valuable consideration.

§ 64H.25.1(5)(b)(2) (1996) (in casual and isolated car sales, where stated price is unrealistically low, sales tax is due on average trade-in value).[8]

On the record before us, there is no basis to set aside the commissioner's conclusion that a consumer purchasing a bundled cell phone provides taxable consideration in the form of the commitment to purchase wireless services from a designated carrier.  Accordingly, I dissent.

---

[8] Given the majority's decision that that directive 11-2 conflicts with the statute, the majority does not address whether directive 11-2 conflicts with 830 Code Mass. Regs. § 64H.1.4 (2000).  The regulation states that a vendor "may claim a credit for any tax collected from the retail customer." 830 Code Mass. Regs. § 64H.1.4(1).  Directive 11-2 states that a "seller may collect and remit tax from the customer on the wholesale cost."  The only pertinent difference between the regulation and directive 11-2 is that the directive expressly permits wireless service carriers and independent retailers to collect from their customers the sales tax on the wholesale cost of a cell phone, whereas the regulation is silent on that point.